# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA



-FILED-
DEC 20 2023
At _____ M
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

[Use this form to sue for employment discrimination. NEATLY print in ink (or type) your answers.]

JAMES DOUGLAS HAMILTON
[You are the PLAINTIFF, print your full name on this line.]

v.

TRINE UNIVERSITY
[The DEFENDANT is who you are suing.]

Case Number: 1:23CV526
[For a new case in this court, leave blank. The court will assign a case number.]

[The top of this page is the caption. Everything you file in this case must have the same caption. Once you know your case number, it is VERY IMPORTANT that you include it on everything you send to the court for this case. DO NOT send more than one copy of anything to the court.]

## EMPLOYMENT DISCRIMINATION COMPLAINT

1. My address is: 18333 DEVALL ROAD, SPENCERVILLE, IN 46788

2. My telephone number is: (260) 409-9937

3. The Defendant's address is: ONE UNIVERSITY AVENUE ANGOLA, IN 46703

4. This action is brought for employment discrimination pursuant to:

   ☒ Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17.
   [race, color, gender, religion, national origin]

   ☒ Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634.

   ○ Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117.

   ○ Other: _____

5. I filed a charge of discrimination with the Equal Employment Opportunity Commission or the Indiana Civil Rights Commission on: MAY 13, 2023

6. The date on my Notice of Right to Sue letter is: OCTOBER 3, 2023

7. The date I received my Notice of Right to Sue letter was: OCTOBER 3, 2023

[DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]

## CLAIMS and FACTS

DO: Write a short and plain statement using simple English words and sentences.
   DO NOT: Quote from cases or statutes, use legal terms, or make legal arguments.
DO: Explain when, where, why, and how the defendant discriminated against you.
DO: Include every fact necessary to explain your case and describe your injuries or damages.
DO: Number any documents you attach and refer to them by number in your complaint.
   DO NOT: Include social security numbers, dates of birth, or the names of minors.
DO: Number your paragraphs. [*The first paragraph has been numbered for you.*]

1. THE PLAINTIFF IS FILING A LAWSUIT OF EMPLOYMENT DISCRIMINATION WITH THE UNITED STATES DISTRICT COURT FOR NORTHERN DISTRICT OF INDIANA. THE DISCRIMINATION WOULD BE BASED ON SEX, AGE AS WELL RELIGION.

PLEASE SEE ATTACHED DOCUMENTS FOR DETAILS

[*DO NOT* write in the margins or on the back of any pages. Attach additional pages if necessary.]

**RELIEF** – If you win this case, what do you want the court to order the defendant to do?

SEE ATTACHMENT

**DOCUMENTS** – I have attached a copy of the following documents:

- ☑ Charge Of Discrimination form filed with the Equal Employment Opportunity Commission or the Indiana Civil Rights Commission
- ☑ Notice of Right to Sue letter
- ☐ Other: _____

**FILING FEE** – Are you paying the filing fee?

- ☑ Yes, I am paying the $405.00 filing fee. I understand that I am responsible to notify the defendant about this case as required by Federal Rule of Civil Procedure 4. [*If you want the clerk to sign and seal a summons, you need to prepare the summons and submit it to the clerk.*]
- ☐ No, I am filing a Motion to Proceed In Forma Pauperis and asking the court to notify the defendant about this case.

[*Initial Each Statement*]

_JDH_ I will keep a copy of this complaint for my records.
_JDH_ I will promptly notify the court of any change of address.
_JDH_ I declare **under penalty of perjury** that the statements in this complaint are true.

_____J. D. H_____   DECEMBER 20, 2023
Signature                                   Date

[*DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.*]

**Claims and Facts**

1. Jurisdiction

    The Plaintiff is filing a lawsuit of employment discrimination with the United States District Court for Northern District of Indiana. The discrimination would be based on sex, age as well religion.

2. The claims and facts as represented below comes substantially from the EEOC complaint which was filed on May13, 2023. Since the Plaintiff had been separated by Trine on January 10, 2023 there was no access to more detailed information that could be used to support this current filing.

3. The Plaintiff began employment with Trine University on June 24, 2013. Employment included teaching varying courses as requested by Trine. For the last five years (2017 – 2022) there was continuous employment with Trine. A portion of this time was instructing many foreign students for the Trine international offering to students from China, the Mideast, India, Malaysia, and Vietnam.

4. From the period of January 2021 to January 2023 Trine University systematically displayed age and sex, then religious-based discrimination against the Plaintiff as well over time culminated in an environment that was hostile to the Plaintiff. This was clearly demonstrated through the following incidents. In January 2021 communication came to the Plaintiff via Ms. Alyson Roeding that she was the curriculum coordinator for the Trine Bachelor of Science Health Administration (BSHA) program. This was a position that the Plaintiff held before this notification. The Plaintiff was never notified that this change had been made. The Plaintiff assisted in the hiring of Ms. Roeding due to a narrow-refined skill set needed in the curriculum development. The Plaintiff inquired with Ms. Andrea Delancey, regarding this change since the Plaintiff had successfully developed five of the key courses for the program. Ms. Delancey was new, so Ms. Kiersten Ebert followed up with the Plaintiff's inquiry but provided minimal valid evidence for this change. Ms. Roeding had no broad experience in health care leadership as well instruction to support the overall requirements of this program. Ms. Roeding's experience was only at midlevel management in a refined area of health care knowledge. She had just started her Doctorate in Business Administration; however, this degree has minimal applicability to the subject matter of health care management. The Plaintiff had 50+ years of experience in working in health care as a senior leader or Chief Executive Officer for four businesses. The Plaintiff as well performed consulting through his consulting firm for multiple high-profile companies, had taught at the university level for over 40 years as well authored two health care books, the last being in 2017, and multiple articles including two published in 2023.

1

The Plaintiff met all of the required criteria of Boyers Scholarship Model. Additionally, Trine contracted with Ms. Roeding to develop the capstone class for this program. The Plaintiff wrote the course since Ms. Roeding did not have the requisite skills to complete the course and its case study content.  Not knowing the exact age of Ms. Roeding, it would be the observation of the Plaintiff that she would fall outside of the protected age group for discrimination. The Plaintiff did not push the issue of what happened due to threat of losing other academic opportunities through Trine. This was the beginning phase of discriminatory activity demonstrated by Trine.

5. During the time frame of 2021 through 2023 the management structure changed in terms of instructor reporting.  Early in 2021 Plaintiff's director was changed to Ms. Andrea Delancey. This was at the time that the above incident occurred.   Ms. Delancey had no experience in health care programing or for that matter the subject matter of health care leadership. Yet it was under Ms. Delancey's watch that Ms. Roeding emerged as curriculum coordinator with no change being communicated to the Plaintiff.  This was a career changing event.

6. The Plaintiff not only instructed in the BSHA program but also taught the general Ethics course offered through Trine.  Management reporting for the Ethics classes was through Mr. Josh Pranger.  During this time frame the Plaintiff always received positive input from Mr. Pranger regarding the Ethic's course instruction. When Ms. Delancey took over responsibility for the Plaintiffs Ethics teaching responsibility, it was announced that an evaluation system was going to be put in place for the adjunct faculty.  There was never a time after this announcement, nor were there any details regarding the evaluation process communicated to the Plaintiff.  The Plaintiff has instructed for other universities where evaluation processes were in place.  In other university settings the evaluation process was fully vetted with the faculty so that measures of evaluation would be known.  It was in this evaluation process that the Plaintiff was terminated from instructing the general Ethics course for Trine.  It was stated that student evaluations were used to make this decision. In the course used for the evaluation the Plaintiff received a 4.13 student evaluation.  The average scoring for all classes instructed by the Plaintiff was 4.5 based on the information that the Plaintiff maintained in his personal files.  This course seemed to be handpicked for evaluation since an Ethics course juxtaposed to the evaluation course, the Plaintiff received a 5.0 student evaluation.  In the normal course of employee evaluations, if performance needs improvement, then steps should be taken to remedy any unacceptable activity. This remediation step was not offered.  There was nothing that the Plaintiff could do to amend this decision. Additionally, more than one evaluation of the same course material should be used for instructor evaluations. For those involved in university instruction it is known that each class stands on its own relative to student interaction and student evaluations. At this point it was apparent to the Plaintiff that

2

the work environment was becoming more difficult and to some extent hostile through intimidation to the Plaintiff.

7. It is important to understand the circumstances of what was indicated to the Plaintiff regarding termination for teaching the Ethics course. Trine is at its core a science, technology, engineering, and math (STEM) university. The Plaintiff had undergraduate training in such disciplines as well its application the first 15 years of his career, thus felt very comfortable with the topics within the Ethics class. The Ethics course covered portions of regulations, personal moral code development as well the ethics of bioengineering, information technology, environmentalism and life issues including abortion as well euthanasia. The course content had been approved by Trine leadership. In the evaluation it was indicated that the Plaintiff should not express his personal opinions as it relates to religion, politics that are not relevant to the course outcomes. However, based on the definition of ethics you are dealing with the issues of right and wrong in terms of what humans ought to do that will benefit society or specific virtues. In the EEOC filing it was indicated that the Plaintiff had been terminated from teaching this course due to student input on their evaluations. Ms. Delancey took at face value what the students said but provided no substantive evidence to support the student comments. Additionally, students expect the opinions of the instructor based on the instructor's experience. The Plaintiff argued that what was communicated in this course fully aligned with course outcomes. This written communication occurred on August 8, 2022. If the Plaintiff had access to the classroom discussion, which he does not, it is known that a complete portfolio of information to refute the comments of the students could be composed. As for the point of age discrimination the instructor that replaced the Plaintiff was outside the protected age group for discrimination.

8. In the investigation by the human resource staff of Trine statements were made that my opinions stated in the class were extreme and polarizing. There was no clear definition of what extreme or polarizing meant. As an example, the Plaintiff has worked his entire career in health care. Both on the clinical and administrative side of medicine. On either side the Plaintiffs focus was bringing health and wellness to those that he served. The Plaintiff brought much needed medical care to indigent populations in many areas of the United States representing all races and creeds. As well helped serve women in much needed cancer care. The plaintiff cannot support abortion due to this lifetime philosophy of care and support for life. In the realm of academia, not supporting abortion is an anathema. Did this fit the definition of extreme and polarizing? In environmental ethics the approach taken by the Plaintiff was not fully supportive of the concept of global climate change caused by anthropogenic activity. This was supported by fact-based information. The Plaintiff taught conservation ecology for another university for many years thus was well informed on the facts of environmentalism. Is not accepting the common mantra of global warming being caused by humans extreme and polarizing? The

basis of removing the Plaintiff was baseless and discriminatory by not being inclusive to the diverse thoughts that does not fit the mantra of today's academia. On many occasions the engineering students agreed with the Plaintiffs assertions on this topic. It was expressed by students that it was a relief to have this point of view represented due to the mantra of other instructor's opinions on this topic. This could be proven if allowed access to the Trine courses taught by the Plaintiff.

9. As for the issue of discussing religion in the classroom, the Plaintiff is acutely aware of how this topic should be handled in the classroom setting. This knowledge was gained after many years of teaching for secular and non-secular universities. As the students discussed the development of their personal moral code it was routine for a number of students to discuss the foundation of their moral code being their faith. Having students of all faiths in the class this would become an active topic of discussion. Student faith background included Confucianism, Buddhism, Islamic, Catholic and all denominations of Christianity. The Plaintiff is fully steeped in the knowledge of these faiths, thus can hold a fact-based conversation on these topics. The Plaintiff never introduced the topic of religion. This was prompted by the students. There would be no doubt that since the Plaintiff is evangelical in background the application of this position will spill over into the conversation as evangelical students would raise very specific biblical application of the topics being discussed. However, this was ALWAYS done appropriately. The discussion of religion was fully brought forward by the students in the class. You cannot separate ethics and moral behavior. They are integrally tied together. By indicating that the Plaintiff needs to restrict conversations on such topic's chafes against academic freedom and free speech. At its heart it is religious discrimination by trying to prevent such conversation. Even when fact based and not opinion which was the basis of this discussion.

10. A portion of the class dealt with local/state laws and regulations for the students. The topics were all over the board with the topic of marijuana legalization being at the top of the discussion. The Plaintiff took a very conservative approach to this topic based on the facts as identified through such organizations as Mayo Clinic. The use of marijuana has been specifically identified by organizations like Mayo Clinic as well the National Institutes of Health/National Center for Biotechnology Information as being detrimental to the health of teens and young adults. Most all students were not aware of such hazards. As well fact-based information regarding crime rate increase was part of this discussion for cities where marijuana use was legalized. These topics were baked into the course content, thus was dealt with accordingly by the Plaintiff. Was the opposition of the legalization of marijuana extreme? Working fully in the environment of mental health impact to not only the students but also the broader communities was fully experienced in the career of the Plaintiff. This was not opinion based instruction.

4

11. After the evaluation conducted on August 8, 2022, it was indicated that the Plaintiff could continue to teach the health care courses.  The Plaintiff had already been assigned a class in the fall semester 2022.  The class ended in December 2022.  In the beginning of 2023, the Plaintiff tried to access the Trine email system and found that this was blocked from entry.  Contact was made with the Trine IT Help Desk, only to find that the email account had be closed based on the Plaintiff being separated from Trine.  This was communicated by John Cilia, Help Desk Manager.  The separation notice was submitted to the Trine IT department on January 10, 2023.  This was signed by Ms. Delancey. Upon inquiry the Plaintiff was told that any instructor not teaching was closed from the Trine IT system.  This was due to the advisement of a third-party consultant for cybersecurity purposes.  It is worth noting that this was never communicated to faculty as well no policy/detail relating to this position has been demonstrated by Trine through the EEOC process.  The use of the term separated means by definition the end of employment. This was not a voluntary separation.  Upon inquiry on January 20, 2023 the Plaintiff received a curt response from Ms. Delaney that the Plaintiff's account had been terminated due to no teaching responsibilities. The Plaintiff had other responsibilities with Trine including the membership on the General Education Committee.  The committee meets monthly or as needed to plan the yearly general education assessment for Trine students that always occurs in the month of May.  As well it is a requirement of Trine that if you do not take IT training courses that separation could occur with Trine. These needs were well known by Trine leadership.  It can only be concluded that the separation notice sent to Trine IT was to be a permanent separation.

12. After the above activity, in the Plaintiffs communication on January 20, 2023 with Ms. Delancey indicated that what had occurred had been discriminatory. The fact pattern by Trine leadership had been fully represented with this final move.  On January 23, 2023 the Plaintiff was contacted by Trine HR with concerns regarding the comments made by the Plaintiff regarding discrimination.  A telephone conference was arranged for January 24, 2023 to discuss the Plaintiffs concerns.  Varying topics were discussed including the Plaintiff's interest in teaching economics since there was an adjunct faculty position open to teach this course.  The Plaintiff was off handedly told that this would not be pursued even though the Plaintiff had successfully taught graduate economics for Trine as well instructed graduate economics for 10+ years for another university.   It was at this point the Plaintiff indicated to Ms. Jamie Norton that it would probably be best for the Plaintiff to not teach any future classes due to lost trust in Trine. Why open yourself to other points of unsubstantiated discriminatory comments and further isolation?  On March 1, 2023 the Plaintiff was offered to instruct a health care class to which the Plaintiff declined.  It was indicated in that communication that the Plaintiff could not work in an environment of discrimination and not allowing open discussion with the

5

students. It was known that in this class that abortion would be discussed, thus allowing another attempt by Trine to build a case against the Plaintiff. The Plaintiff fully felt that this course offering was made knowing that it would be declined since this was indicated in the discussion with Ms. Jamie Norton, then indicate that the Plaintiff voluntarily terminated his employment with Trine. This was by purposeful design to substantiate the legal position of Trine.

13. It can be anticipated that Trine's defense will argue that the mix of male and female's adjunct instructors under Ms. Delaney has been stable since 2021. However, the data supplied needs additional examination. In the EEOC response by Trine it was indicated that Ms. Delaney had 30 direct reports. The male female mix was 40% male and 60% female. For the adjunct faculty the mix was 34% male and 66% female which has been stable since 2021. However, what is not clarified is the male/female mix ratio for all staff since Ms. Delaney was assigned leadership. In addition, the age distribution for the faculty was not offered. This needs much further investigation to see if age discrimination has occurred.

14. Through this it can be seen that Trine had built an agenda to terminate the Plaintiff. As time went along the environment changed to what you would call a shrouded hostility to the Plaintiff. This was accomplished through obvious isolation by lack of management communication, plus leadership removing the Plaintiff from a career path of curriculum coordinator. This has all the trademarks of intimidation, feeling threatened for future employment as well a feeling of being unwelcomed. Key to this was the ongoing lack of communication with the Plaintiff regarding removal from being the BSHA curriculum coordinator. Then the abrupt termination by Trine regarding the Ethics class. This was followed by Trine separating the Plaintiff on January 10, 2023 with no prior communication. Two attempts have been made to settle this case. This was declined by the Trine attorney.

Percolating through this timeline were obvious elements of age, sex and religious discrimination. This is sad since the Plaintiff in 2023 was nominated for Faculty Member of the Year for another university.

## Relief

The expected relief for what has occurred would be the payment of three years of lost wages. The last five-year average income was $22,000 per year which does not include pay increases.  This would come to a total of $66,000.  This would represent the lost wages for the year of 2023 as well two years of future income if employment had been maintained.

I have worked with other universities to increase my teaching load.  However, this has not filled the void created by Trine.

Trine may argue against this logic.  However, over the years of teaching at Trine courses of instruction included graduate level economics, corporate finance, managerial accounting, English plus other classes including a myriad of health care courses.  Thus, many other teaching opportunities could have been made available by Trine if this had not occurred.